UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIAM G. and JULIE A. HARSHAW, | Case No. 1:08-cv-104
Husband and Wife, individually and as Guardian of |
ROMAN A. HARSHAW, a minor, |

    Plaintiffs, |

        v. | HONORABLE PAUL L. MALONEY

BETHANY CHRISTIAN SERVICES, |
A Michigan corporation, |
BETHANY CHRISTIAN SERVICES INT'L, INC., |
a Michigan corporation, and |
BETHANY CHRISTIAN SERVICES OF |
HAMPTON ROADS, a Michigan corporation, |

    Defendants. |

_____

# OPINION and ORDER

**Conditionally Granting the Motion to Voluntarily Dismiss BCS-Hampton Roads without Prejudice**

This is a diversity tort case arising under Michigan common law. Plaintiffs William and Julie Harshaw ("Harshaw"), a married couple proceeding individually and as guardians of their adopted son Roman HARSHAW, are Virginia citizens. *See* Complaint filed January 31, 2008 ("Comp") ¶¶ 1-2. The Harshaws' complaint alleges that all three defendants – Bethany Christian Services ("BCS"), Bethany Christian Services International, Inc. ("BCSI"), and Bethany Christian Services of Hampton Roads, Inc. ("BCS-Hampton Roads") are Michigan corporations, but it fails to specify their principal places of business. *See* Comp ¶¶ 2-5.

In response to a BCS advertisement, the Harshaws attended an informational meeting at BCS's regional office in Virginia Beach, Virginia on June 12, 2003, and the following day they completed and submitted a preliminary application to adopt a child through one of BCS's programs in Russia, China or Guatemala. *See* Comp ¶¶ 11-13 and Exhibit ("Ex") A. The Harshaws' application stated that they would accept a child with "very minor medical problems and would not consider a child with moderate to severe medical problems." Comp ¶ 13. The Harshaws submitted another Application for International Adoption to BCS on June 18, 2003 which stated that they were "interested in parenting a child that has a positive prognosis for both mental and physical development." Comp ¶¶ 14-15 and Ex B.

As required by Bethany, the Harshaws underwent a pre-adoption family assessment conducted by BCS's regional office in Virginia, during which they signed an International Adoption Services Agreement. *See* Comp ¶¶ 17-18 and Ex C. Relying on BCS's claimed experience and expertise in international adoption, the Harshaws understood that if the pre-adoption family assessment was favorable, BCS would act as intermediary and/or fiduciary on their behalf to effectuate an adoption. *See* Comp ¶¶ 16 and 19.

On August 22, 2003, BCS issued a pre-adoption assessment report stating that the Harshaws "feel equipped to parent a child who may have a minor, correctable problem with a good prognosis for normal development", and approving them to adopt a child from Russia who was aged 12 to 36 months and had (at most) a "minor, correctable problem with a good prognosis for normal development." *See* Comp ¶¶ 20-22 and Ex D. The Harshaws paid BCS about $16,000 for its services. *See* Comp ¶ 24.

BCS representative Jeannie Walton initially referred a Russian child as a candidate for the

Harshaws, but the child had been severely burned by his mother and suffered medical problems as a result. The Harshaws declined the referral and emphasized to BCS that they could only accept a child with minor, correctable conditions and a prognosis for normal development. *See* Comp ¶ 25. Next, BCS provided the Harshaws with the name, age, sex, and photograph of Roman; a two-page document represented to be an English translation of Roman's medical records at his orphanage; and an untranslated videotape showing what appeared to be Roman interacting with his caregivers in Russia. *See* Comp ¶¶ 26-29 and Ex E (Translated Summary of Russian Medical Records).

Relying on the videotape and the purported summary of Roman's medical records, the Harshaws notified BCS that they were willing to adopt Roman so long as BCS first provided any additional medical information about the boy. *See* Comp ¶ 30. At the invitation of BCS representative Jeannie Walton, the Harshaws visited a BCS office to discuss the adoption. When the Harshaws asked Walton whether Roman and the other Russian children which they were considering for adoption were medically healthy, Walton responded that they were healthy,

> and explained that a medical doctor associated with Bethany, referred to as "Dr. D," had specific expertise in the evaluation of Russian children for the purposes of adoption and that Dr. D regularly examined the children in Russia on trips from his home in New York. Ms. Walton stated that Dr. D had examined Roman and that Roman was O.K. The Harshaws learned that the individual referred to as "Dr. D", is Dr. Michael Dubrovsky.

Comp ¶ 31. Relying on Walton's assurances regarding Dr. Dubrovsky's purported regular examination of Roman *et al.*, the Harshaws traveled to the orphanage in Krasnoyarsk, Russia in December 2003, with two BCS representatives, Aleksandr Vladimirovich ("Alex") and Yelena Vladimirovna ("Yelena"), acting as interpreters and guides. The Harshaws were permitted to see Roman for only about one hour. *See* Comp ¶¶ 32-33. Noting that Roman looked thin and perhaps ill, the Harshaws asked interpreter Alex if Roman was okay; after consulting with orphanage staff,

Alex told the Harshaws that Roman had had bronchitis. *See* Comp ¶¶ 34-35. The Harshaws asked for additional information about Roman and about his mother's social and medical background, but Alex responded that no further information was available. They saw Roman for about an hour the next day, then returned to America and met again with BCS's Jeannie Walton. *See* Comp ¶¶ 36-38.

When Walton asked how Roman looked and the Harshaws responded that he "appeared as if he might have been sick but otherwise appeared okay", Walton reassured them that what they saw in Roman was common in institutionalized children, and that his issues were minor and often resulted from malnutrition and crowded living conditions. Walton asked if the Harshaws wished to proceed with the adoption, and they said yes. *See* Comp ¶¶ 38-40. The next month, January 2004, the Harshaws returned to Russia to attend the final adoption hearing and take custody of Roman. When they took physical custody of Roman at the orphanage, they asked if there were any more medical records regarding Roman or his mother and were told that there were none, and BCS never provided them with any additional medical information from then until after the adoption was completed. *See* Comp ¶¶ 41-44.

After the Krasnoyarsk Regional Court entered an Order of Adoption on January 27, 2004, the Harshaws took Roman home to America, where they soon noticed that he was not developing and acting normally for his age and reported health. They spent about a year and a half taking Roman to physicians and mental-health professionals to figure out what might be wrong, leading to a January 2006 examination by neurodevelopmental pediatrician Dr. Frank Aiello III, M.D., who suggested that Roman might be suffering from fetal alcohol syndrome and ordered more testing. *See* Comp ¶¶ 45-49. Following three days of examination and tests in June 2006, Dr. Ronald S. Federici, Psy.D., clinical director of a "neuropsychological and family therapy" clinic in Virginia,

who diagnosed Roman with an alcohol/drug-related birth defect, identified as a fetal alcohol spectrum disorder causing neurocognitive and psychiatric abnormalities. *See* Comp ¶¶ 50-51.

The Harshaws allege that throughout the 24 months following the January 2004 adoption, they expressed concerns to BCS's social worker, during post-placement visits, about Roman's medical, emotional and psychological condition and behavior. The BCS social worker responded that Roman's problems were frequently associated with being institutionalized and that children adopted from such institutionalized settings could "grow out of" the problems with a loving family. Neither the social worker nor anyone else at BCS provided advice or referrals to help the Harshaws diagnose and treat Roman. *See* Comp ¶ 59.

At an unspecified time in or after June 2006 (when Dr. Federici examined Roman), the Harshaws informed BCS of Federici's diagnosis and asked for more medical information, which BCS stated would be difficult to retrieve. *See* Comp ¶¶ 52-53. After the Harshaws repeated their requests, in October 2006 BCS provided two items which they had not previously provided: a ten-page Russian extract of Roman's medical records and history and a six-page English translation. *See* Comp ¶¶ 54-55 and Ex F. The Harshaws allege that BCS either had these two documents in its possession all along (i.e., before the adoption was completed) or could and should have obtained them for review, translation and delivery to the Harshaws before they made their decision whether to adopt Roman. *See* Comp ¶¶ 56-57. The Harshaws allege that they relied on BCS to provide all the information reasonably available to it and if BCS had done so, they would not have pursued Roman's adoption. *See* Comp ¶¶ 58 and 64-66. They also hypothesize that if BCS had provided complete, accurate medical information and appropriate post-placement assistance, they could have diagnosed Roman's condition earlier and started providing more-appropriate treatment earlier. *See*

Comp ¶ 67.

The Harshaws assert four claims under Michigan common law: fraud (Comp ¶¶ 68-83), negligent misrepresentation (Comp ¶¶ 84-94), negligent failure to disclose (Comp ¶¶ 95-99), and simple negligence (Comp ¶¶ 100-104). They allege that after Roman's adoption in January 2004, BCS admitted it had "misinformed" the Harshaws by providing "unclear" medical information during the adoption process, and that Dr. Dubrovsky never examined Roman as it had represented. *See* Comp ¶¶ 60-61. On each of the four counts, the Harshaws seek $75,000 in compensatory damages plus punitive damages, interest, and attorneys' fees and costs, and they demand a jury trial. *See* Comp at 15, 17, 18 and 19.

The Harshaws filed the instant complaint in January 2008, and with an extension of time the three BCS defendants jointly filed an answer in April 2008. *See* Doc. Nos. 1, 6 and 8. On April 17, 2008, BCS counsel (Perrin Rynders, Esq. of Varnum, Riddering LLP in Grand Rapids, Michigan) sent an e-mail to one of the Harshaws' counsel (Kevin A. Rynbrandt, Esq. of Rymbrandt & Associates, PLLC in Grand Rapids) regarding the basis for federal diversity jurisdiction in Michigan. BCS's e-mail stated, in its entirety:

> Kev[in], I'm putting the answer together and I just realized that we might not have a diversity jurisdiction case. Isn't Bethany of Hampton Roads a citizen of Michigan and also Virginia? For sure it's a citizen of Michigan, but my understanding is that corporations have dual citizenship (where they're incorporated and where they have their principal place of business). Before I spend time digging into that issue too deeply, let me know if you've looked into it already.
>
> I'll be in all morning.

Brief of Defendants BCS, BCSI and BCS-Hampton Roads filed June 29, 2009 in Opposition to Plaintiffs' FED. R. CIV. P. 41 Motion to Voluntarily Dismiss BCS-Hampton Roads ("Defs' Opp"), Ex A. The record does not reflect the response, if any, from the Harshaws' counsel.

From about October 2008 through June 2009, the parties conducted discovery and the Magistrate Judge resolved discovery disputes, *see* Docs. 17-78.

**On June 15, 2009 the Harshaws moved for voluntary dismissal without prejudice of defendant Bethany Christian Services of Hampton Roads alone, pursuant to Federal Rule of Civil Procedure 41(a);** BCS filed an opposition brief on June 29 and the Harshaws filed a reply brief on July 13, 2009. *See* Docs. 79-82. BCS's opposition brief recognizes the court's authority to dismiss BCS-Hampton Roads without prejudice to maintain complete diversity. <u>But BCS contends that the court should dismiss the complaint without prejudice as to *all three* defendants;</u> it emphasizes the uncontested fact that they alerted the Harshaws' counsel in writing to BCS-Hampton Roads' Virginia citizenship in April 2008, even before it filed the answer.

<u>Alternately, BCS asks that if the court permits the Harshaws to voluntarily dismiss only BCS-Hampton Roads without prejudice, third conditions be attached.</u> First, BCS contends that the Harshaws' re-filing of claims against BCS-Hampton Roads should be conditioned on them reimbursing BCS-Hampton Roads for the expense it incurred due to its erroneous inclusion in this action. Second, BCS contends that the remaining BCS defendants should be required to file an amended complaint to appropriately re-state its allegations given that only BCS and BCSI remain as defendants. BCS admits that the filing of an amended complaint would enable it to assert additional affirmative defenses – defenses which, it admits, it could have raised earlier, but deliberately delayed raising because they expected this case to be dismissed for lack of diversity jurisdiction. *See* Defs' Opp at 17 ("Although Defendants uncovered additional affirmative defense some months ago, they did not move to amend their answer at that time (although such amendments are freely granted as justice so requires) since Defendants had every expectation that Plaintiffs'

complaint would be dismissed for lack of subject-matter jurisdiction."). Third, BCS asks the court to require that if the Harshaws re-file these claims against BCS-Hampton Roads, they bring suit in the courts of Kent County, Michigan.

**For the reasons that follow, the court will only conditionally grant the Harshaws' motion to voluntarily dismiss BCS-Hampton Roads, but will also reject BCS's attempt to impose further conditions and to require the Harshaws to amend the complaint.**

As a factual matter, it is undisputed that the Harshaws are both Virginia citizens and that defendant BCS-Hampton Roads is incorporated in Michigan but has its principal place of business in Virginia. As a legal matter, the parties agree that by federal statute, this renders BCS-Hampton Roads a citizen of both Michigan and Virginia. *See Leys v. Lowe's Home Ctr., Inc.*, 601 F. Supp.2d 908, ___ (W.D. Mich. 2009) (Maloney, C.J.) (citing *Wolf v. Bankers Life & Cas. Co.*, 519 F. Supp.2d 674, 676 n.1 (W.D. Mich. 2007) (citing 28 U.S.C. § 1332(c)(1))). *See, e.g., Lozar v. Birds Eye Foods, Inc.*, 2009 WL 1441584, *2 (W.D. Mich. May 18, 2009) (Maloney, C.J.) ("The complaint alleges that Birds Eye has its PPB in New York – which, if true, makes Birds Eye a citizen of New York for this purpose.").

The parties also agree that this court has jurisdiction only if the parties are completely diverse. *See Wolf*, 519 F. Supp.2d at 678 (citing *Probus v. Charter Comms., LLC*, 234 F. App'x 404, 407 (6th Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999))), and that the presence of a Virginia defendant destroys complete diversity, which "exists only when no plaintiff and no defendant are citizens of the same state." *Moscardelli v. Michigan Laborers Health Care Fund*, 2008 WL 762237, *2 (W.D. Mich. Mar. 19, 2008) (Maloney, C.J.) (citing, *inter alia*, *Curry v. US Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citing *Jerome Duncan, Inc. v.*

*Auto-by-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999))) (internal quotation marks omitted).

Finally, the parties agree that the court has the authority and discretion to preserve diversity by dismissing a non-diverse party without prejudice, so long as that party is not an indispensable party as defined by Federal Rule of Civil Procedure 19. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 834 n.7 (1989) (noting with approval, "Other courts have remanded the case to the district court with mandatory instructions to allow an amendment dismissing the nondiverse party in order to preserve diversity jurisdiction.") (citations omitted); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp.2d 870, 876 (E.D. Mich. 1999) (Edmunds, J.) ("Both district courts and appellate courts have the authority to dismiss a dispensable party who is a jurisdictional spoiler at any time during the pendency of proceedings.") (citing *Newman-Green*, 490 U.S. at 832, and *Commercial Union Ins. Co. v. Cannelton Indus., Inc.*, 154 F.R.D. 164, 170 (W.D. Mich. 1994) (Quist, J.)).

Neither party contends that BCS-Hampton Roads is indispensable, and the court determines that it is not indispensable. *See generally Republic of Philippines v. Pimentel*, – U.S. –, 128 S.Ct. 2180, 2191-94 (2008) (Kennedy, J., joined by C.J. Roberts and JJ. Scalia, Thomas, Ginsburg, Breyer and Alito) (discussing Rule 19(b)(1)'s four factors for determining whether a party is indispensable: the extent to which a judgment rendered in the party's absence would prejudice it or other parties; the extent to which that prejudice could be lessened or avoided by some measure short of dismissal; whether a judgment rendered without the party would be "adequate"; and whether the plaintiff would have an adequate remedy without the nondiverse party in the case). If the Harshaws ultimately prevail on their claims against BCS and BCSI, this court will be able to afford them complete relief without BCS-Hampton Roads in the case, because they seek only monetary damages

from BCS and BCSI for their alleged torts; they do not seek any equitable, injunctive or declaratory relief which cannot be issued without also entering judgment against BCS-Hampton Roads. *Contrast Soberay Mach. & Equip. Co. v. MRF LTd., Inc.*, 181 F.3d 759 (6th Cir. 1999) (in diversity action brought by seller of machine against intended end-user of machine, and against equipment supplier which had agreements with both seller and end user, court held that supplier was an indispensable party and the case could not proceed if the plaintiff voluntarily dismissed the supplier). Therefore, the court has authority and discretion to dismiss BCS-Hampton Roads without prejudice. *See Curry v. US Bulk Transport, Inc.*, 462 F.3d 536, 543 n.4 (6th Cir. 2006) ("It is not disputed that Priddy and Susman, as joint tortfeasors, are dispensable parties to this litigation.") (citing *Casas Office Mach., Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 675-76 (1st Cir. 1994) ("'it is well-established that joint tortfeasors and co-conspirators are generally not indispensable parties" because of joint and several liability)); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001) (in investment-brokerage firm's diversity action to compel arbitration of dispute with client's executor, the firm's branch manager, who was not diverse to the client, was not indispensable) (citing, *inter alia*, FED. R. CIV. P. 19 Advisory Committee Notes); *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1198, 1199 (6th Cir. 1983) ("It is beyond peradventure that joint tortfeasors are not indispensable parties[.] * * * Since the complaints at bar allege conditions of asbestosis resulting from exposure to products of both the solvent co-defendants and Unarco and/or J-M, the Chapter 11 debtors are joint tortfeasors and accordingly not indispensable."); *Reynolds v. Ferguson*, 73 F. Supp.2d 841, 843 (W.D. Mich. 1999) (Quist, J.); *Brady v. Burtt*, 979 F. Supp. 524, 528 (W.D. Mich. 1997) (Quist, J.) ("The complaint contains allegations of tortious conduct consisting of fraud and misrepresentation. Accordingly, Lifton, as an alleged joint

tortfeasor, is not an indispensable party.").

The Harshaws will still have an adequate remedy against BCS-Hampton Roads, because they can presumably file these claims against BCS-Hampton Roads, a Michigan corporation with at least one office in Virginia, in the state courts of Michigan or Virginia.[1]  *See DeGidio v. Centicor, Inc.*, 2009 WL 1867676, *3 (N.D. Ohio June 29, 2009) (James Carr, C.J.) ("DeGidio retains an adequate remedy against the [nondiverse, dispensable] Healthcare Defendants as he can proceed with his claims in state court.  While fighting on two fronts will no doubt be inconvenient, and probably more expensive, I do not find the maintenance of two lawsuits unfairly or unduly prejudicial.") (citing *PaineWebber*, 276 F.3d at 204).

The question, then, is only whether the court *should* exercise its discretion to dismiss the non-diverse part, BCS-HR, without prejudice, rather than taking a course of action less favorable to the Harshaws.  **In its entirety, the Harshaws' brief in support of their motion for voluntary dismissal without prejudice of BCS of Hampton Roads reads as follows:**

> On May 29, 2009, Defendants stated that they believed that Defendant Bethany Christian Services of Hampton Roads ("Bethany-Hampton Roads") was a Virginia corporation [sic, citizen] for purposes of diversity of jurisdiction analysis under 28 U.S.C. § 1332.  In response, Plaintiffs, *inter alia*, requested that Defendants produce certain documents related to the business structure and operations of Bethany-Hampton Roads.  Defendants produced responsive documents on June 12, 2009.  On

---

[1]

The court intimates no opinion as to which state's substantive law will apply to the Harshaws' claims against BCS-Hampton Roads if they are re-filed elsewhere.

The court declines to adopt the defendants' confident assertion that this court would have applied Michigan law and that "[r]equiring Plaintiffs to file any renewed action against Bethany Hampton Roads in Michigan will ensure that the same law is applied to any new action." Defs' Opp at 16.  When sitting in diversity, a federal district court first applies the *choice-of-law rules* of the forum State, *see Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) (citing *NILAC Int'l Marketing Group v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir 2004)), *reh'g & reh'g en banc denied* (6th Cir. May 29, 2009), but not necessarily the forum State's substantive law.

> review of these documents, Plaintiffs concluded, for the first time, that the principal place of business of Bethany-Hampton Roads was located in Virginia, and not Michigan. Plaintiffs brought this motion [on] the first business day after receipt of voluminous supplemental documents detailing the business of Bethany-Hampton Roads.
>
> Discovery in this matter is still ongoing. There are no motions pending. Furthermore, as to all three defendants are jointly represented, there is no prejudice to any defendant. *See, e.g., Bosteve Ltd. v. Marauszwki*, 110 F.R.D. 257, 259 (E.D.N.Y. 1986); *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 15 F.R.D. 14, 18 (S.D.N.Y. 1953); *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 114 (2nd Cir. 1985).
>
> Therefore, because Plaintiffs have concluded that Bethany-Hampton Roads is not a proper defendant in this case pursuant to 28 U.S.C. § 1332, Plaintiffs ask this Court to dismiss Defendant Bethany Christian Services of Hampton Roads as a party to this case and to do so without prejudice. Plaintiffs additionally request an expansion of time to file supporting documents in furtherance of this motion.

The Harshaw counsel assert that they did not realize until just last month that their inclusion of BCS-Hampton Roads destroyed diversity. The Harshaw counsel assert that only after they reviewed BCS's last batch of discovery documents (produced on June 12, 2009) did they conclude "for the first time, that the principal place of business of Bethany-Hampton Roads was located in Virginia, and not Michigan." The court finds that this assertion is untenable.

The Harshaws do not contest the authenticity, admissibility, or accuracy of the April 2008 e-mail advising them that BCS-Hampton Roads was not only a Michigan citizen but also probably a Virginia citizen. The short, clear e-mail began by stating, "we might not have a diversity jurisdiction case" and asking "Isn't Bethany of Hampton Roads a citizen of Michigan and also Virginia?" Defs' Opp, Ex A. The e-mail reminded the Harshaws' counsel of the unremarkable proposition that for purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation (Michigan) and the state where it maintains its principal place of business (Virginia). *See* Defs' Opp, Ex A ("For sure it's a citizen of Michigan, but my understanding is that corporations

have dual citizenship (where they're incorporated and where they have their principal place of business)."). It strains credulity to suggest that it took the Harshaw counsel more than fourteen months to realize that "Bethany Christian Services *of Hampton Roads [Virginia]*" had its principal place of business *in Virginia* – particularly after defense counsel reminded them of this likelihood as soon as the complaint was filed. The Harshaw counsel identify nothing which allegedly led them to believe that BCS *of Hampton Roads*, a region which is in Virginia, would have its principal place of business not in Virginia but in Michigan.

Reasonable investigation would have led the Harshaws' counsel not to name BCS-Hampton Roads in this lawsuit at all, or at least to drop that party sometime shortly after being alerted and cautioned by defense counsel in *April 2008*. After all, before the defendants filed an answer, the Harshaws were entitled to amend their complaint without seeking leave of court or the consent of the opposing parties. *See Essroc Cement Corp. v. CPRIN, Inc.*, 2009 WL 129809, *1 (W.D. Mich. Jan. 20, 2009) (Maloney, C.J.) (citing *Rogers v. AK Steel Corp.*, 1998 WL 1753590, *2 (S.D. Ohio Apr. 16, 1998) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . .") (quoting FED. R. CIV. P. 15(a))); *See, e.g., Aslani v. Sparrow Health Sys.*, 2009 WL 736654, *2 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) (noting court's acceptance of amended complaint, without plaintiff seeking leave, where defendants had not yet filed answers); *Riley v. Fritz*, 2009 WL 261257, *1 (W.D. Mich. Feb. 4, 2009) (Maloney, C.J.).

Because of Harshaw counsel's lack of care, they heedlessly sued BCS-Hampton Roads here, where jurisdiction was fairly plainly lacking, and then unreasonably delayed the inevitable. Even without inferring a lack of forthrightness and good faith, Harshaw counsel's manner of proceeding warrants some reimbursement, however minor, for the defendants.

"Traditionally, a plaintiff . . . had an unqualified right, upon payment of costs, to take a nonsuit in order to file a new action after further preparation, unless the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Cone v. West Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947) (citing *Pleasants v. Fant*, 89 U.S. (22 Wall.) 116, 122 (1874) and *Jones v. SEC*, 298 U.S. 1, 19 (1936) (Sutherland, J.)). Federal Rule of Civil Procedure 41(a)(1) "preserves this unqualified right of the plaintiff to a dismissal without prejudice *prior to the filing of defendant's answer.*" *Cone*, 330 U.S. at 217 (emphasis added). S*ee* FED. R. CIV. P. 41(a)(1)(A):

(a) **Voluntary Dismissal**

(1) *By the Plaintiff*

(A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2 [governing class actions], and 66 [governing receivers], and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(I) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

Boldface and italics in original. *See, e.g., Logue v. Nissan North America, Inc.*, 2008 WL 2987184 (W.D. Tenn. July 30, 2008) (where defendant had filed only a motion to dismiss, not an answer or a motion for summary judgment, the plaintiff still had the right under Rule 41(a)(1) to voluntarily dismiss the complaint without court order or leave of opposing counsel); *Rouse v. Caruso*, 2007 WL 909600 (E.D. Mich. Mar. 23, 2007) (same).

Here, however, all three BCS defendants jointly filed an answer on April 23, 2008, *see* doc. No. 8, more than one year before the Harshaws filed the instant motion to voluntarily dismiss without prejudice their claims against BCS-Hampton Roads. Once the defendants filed their answer,

-14-

the Harshaws' request for voluntary dismissal of a party was governed no longer by Rule 41(a)(1) but by Rule 41(a)(2), Voluntary Dismissal- By Court Order. The latter provides, in pertinent part, "Except as provided in Rule 41(a)(1), an action may be dismissed at plaintiff's request *only by court order, on terms that the court considers proper.*" Emphasis added. *See Albright v. Upjohn Co.*, 788 F.2d 1217, 1222 (6th Cir. 1986) (Ralph B. Guy, J., dissenting o.g.) ("Rule 41(a) provides that after a party has filed either an answer or a motion for summary judgment a plaintiff may not dismiss as to that party without order of the court or by stipulation with [sic] all parties who have appeared.").

Outright dismissal of the entire case, however, would be too extreme a measure on this record. It is undisputed that defendants BCS and BCSI are properly before this court, and neither they nor BCS-Hampton Roads have been egregiously prejudiced by the Harshaws' admittedly unwise inclusion and retention of the latter in this action. First, the parties have not filed dispositive motions yet,[2] so the defense has not incurred the expense of a Rule 12(b)(1) motion to dismiss the claims against BCS-Hampton Roads for lack of subject-matter jurisdiction. Moreover, because BCS-Hampton Roads has not moved to dismiss or for summary judgment, it cannot be said that the Harshaw's request to voluntarily dismiss BCS-Hampton Roads without prejudice is an attempt to avoid an adverse judgment on the merits. *Cf. Pennington v. Lake Local Schs. Bd. of Ed.*, – F.R.D. –, –, 2009 WL 1652239, *3 (N.D. Ohio June 15, 2009) (Katz, J.) (when considering propriety of plaintiffs' motion for Rule 41(a)(2) dismissal without prejudice, court noted that plaintiffs were not trying to avoid judgment on the merits, because they filed their motion more than one month before

---

[2] BCS states that "[t]he reason Defendants have not yet filed a Motion for Summary Judgment is because they knew this Court lacked subject matter jurisdiction, and any decision by this Court on the merits would not be effective unless and until this jurisdictional issue was resolved." Defs' Opp at 14 n.13. This does not explain, however, why the defendants did not file a motion to dismiss the complaint without prejudice as to BCS-HR for lack of subject-matter jurisdiction.

the defendants moved for summary judgment). Second, all three defendants are represented by the same counsel, and it does not appear that their answer was rendered appreciably lengthier (or its preparation appreciably more expensive) by the need to answer on behalf of Hampton Roads too.

Accordingly, the court will permit the Harshaws to dismiss only BCS-Hampton Roads without prejudice *if* they first reimburse the defendants for the cost of responding to the instant motion including attorney's fees. But at this time, the court will not require the Harshaws to reimburse any portion of the expense incurred in preparing the joint answer.

"This middle course[3] is equitable because it adequately protects the rights and interests of [all] parties." *Yetman v. CSX Transportation, Inc.*, 2009 WL — at *– (W.D. Mich. 2009) (Maloney, C.J.) (citing *Martin v. City of Daytona Beach*, 2008 WL 4938347, *1 (M.D. Fla. Nov. 18, 2008) ("In exercising this 'broad equitable discretion under Rule 41(a)(2)', . . . the Court must weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate.") (quoting *McCants*, 781 F.2d at 856)). Under the disposition contemplated by today's opinion, the Harshaws will need not to pay BCS-

---

3

The most lenient of the three options would be to let the Harshaws abandon their claims against BCS-Hampton Roads without imposing *any* conditions on their right to bring a repeat suit on those claims. *See, e.g., King v. St. Lawrence*, 2008 WL 4559384, *1 and n.2 (S.D. Ga. Oct. 10, 2008). But that would insufficiently protect BCS-Hampton Roads's rights, imposing no consequence on the Harshaws if they choose to subject their adversary to suit a second time, choosing a suitable forum as they should have done the first time around.

That would upset Hampton Roads's reasonable expectation that, as a matter of equity, it will be haled into court and suffer the inconvenience, distraction, apprehension, possible adverse publicity, and expense of litigation only once per controversy. *See Yetman*, 2009 WL 35351 at *4 n.2 ("Such an action would insufficiently protect the defendant's rights, imposing no consequence on the plaintiff if he chose to subject his adversary to suit a second time on claims he could have litigated now. That would upset CSX's reasonable expectation that, as a matter of equity, it will be haled into court and suffer legal expenses *only once* for each controversy.") (emphasis in original).

Hampton Roads's share of the defense costs in the instant case unless they sue BCS-Hampton Roads again regarding this same controversy. Nothing in the record suggests that such a limited fee award would unduly burden the Harshaws or excessively deter them from re-filing those claims; for example, she is not proceeding *in forma pauperis* or *pro se*. *Yetman*, 2009 WL — at *–; *contrast Eaker v. Miller*, 2008 WL 4820361, *3 n.6 (M.D.N.C. Sept. 15, 2008) ("Courts sometimes condition Rule 41(a)(2) dismissal upon payment of costs (including attorneys fees) to the defendants who are being dismissed. Such a condition would be futile here since plaintiff is proceeding *in forma pauperis*.") (internal citations omitted).

**Nor will the court require the Harshaws to "file an Amended Complaint in this action that removes any and all allegations against Bethany Hampton Roads"**, as requested by the defendants. *See* Defs' Opp at 14. The complaint will not be rendered unclear or confusing by the mere dismissal of one of three apparently-related corporate defendants, who are in any event sued as alleged joint tortfeasors. If the court ultimately dismisses BCS-Hampton Roads, future opinions and filings simply will no longer include BCS-Hampton Roads in the caption. The factual allegations and legal theories remain sufficiently well pled to satisfy the federal system's generally-undemanding "notice pleading" threshold.

Moreover, BCS and BCSI acknowledge that requiring the Harshaws to file an amended complaint on this ground would have the convenient side effect that they would then be permitted to file a new answer – asserting affirmative defenses that they admit they knew about earlier. Absent extraordinary circumstances, relief should be clearly sought by separate motion, not inserted in a brief opposing an adversary's motion on another issue. In other words, if the defendants wish to amend their answer, they need to file a proper motion for leave to amend and it will be routinely

referred to the Magistrate Judge for resolution. *See Grier v. Wayne Cty. Cir. Ct.*, 2007 WL 1106143, *3 (E.D. Mich. Apr. 12, 2007) (Sean Cox, J.) ("In his Response to NLCSG's Motion to dismiss, Plaintiff seeks leave to file a first amended complaint to add a claim . . . . Plaintiff must file a separate motion for leave that includes the proposed amended complaint.").

**Finally, the court rejects the BCS defendants' unusual notion that this court can dictate where the Harshaws may re-file these claims against BCS-Hampton Roads.** They identify no authority for a federal district court to restrict the available forums for claims it has dismissed without prejudice for lack of jurisdiction. Specifically, no Constitutional provision or statute empowers this court to tell the Harshaws that they must pursue BCS-Hampton Roads in a state court or another federal court, let alone to somehow designate a particular state court (the Kent County Circuit Court) as their only option. If the Harshaws file their claims against BCS-Hampton Roads in another court, BCS-Hampton Roads will be free to lodge whatever objections to jurisdiction or venue it may have. In turn, that court will have the right, duty, and ability to ascertain whether jurisdiction and venue are proper in the Harshaws' newly chosen forum.

### ORDER

The plaintiffs' motion to voluntarily dismiss their claims against defendant Bethany Christian Services of Hampton Roads without prejudice [doc. # 79] is **CONDITIONALLY GRANTED**.

**No later than Monday, August 17, 2009, the defendants SHALL FILE** a detailed itemized list of the reasonable attorneys' fees and costs which they incurred in preparing and filing their brief in opposition to the instant motion ("said amount").

**No later than Monday, August 31, 2009, the plaintiffs MAY FILE** a notice stating that they paid or are paying said amount to defendant BCS of Hampton Roads.

If the plaintiffs file such notice and pay said amount, the court will dismiss BCS of Hampton Roads without prejudice and permit the case to proceed against the two other defendants.

If the plaintiffs do not file such notice and pay said amount, on Wednesday, September 2, 2009 the court will dismiss the entire case without prejudice for lack of subject-matter jurisdiction.

This is <u>not</u> a final and appealable order.[4] [5]

---

[4]

Pursuant to the amended case management order, the Magistrate Judge will conduct a settlement conference on January 20, 2010, and this judge will conduct the final pretrial conference on February 16, 2010. Jury trial commences with *voir dire* on March 1, 2010. *See* Doc. 28.

[5]

**If the court ultimately dismisses BCS-Hampton Roads without prejudice, the order doing so will provide that the Harshaws may not re-file these claims against BCS-Hampton Roads in another forum until and unless they pay reasonable attorneys' fees and costs which the defendants incurred in this case through the date of the dismissal order.** That includes, for example, the expense of preparing the joint answer, one-third of the defendants' discovery expenses. *Cf. Bell-Coker v. City of Lansing*, 2009 WL 80291, *3 (W.D. Mich. Jan. 9, 2009) (Maloney, C.J.) ("The court will grant Coker the voluntary dismissal of the three claims without requiring her to pay the defendants' costs at this time. * * * But Coker cannot with impunity wait for the defendants to begin defending against these three claims, abandon them, and later put the defendants to the expense of a *second* suit on the same causes of action. Accordingly * * * the court will prohibit Coker from again suing these defendants on these three claims without first paying the City the reasonable attorneys' fees and costs it has incurred in the instant case.").

*Ryerson & Haynes v. American Forging & Socket Co.*, 2 F.R.D. 343 (E.D. Mich. 1942) (where plaintiff at a pre-trial hearing requested dismissal of action without prejudice after defendant had filed an answer, the court granted plaintiff's motion "provided that prior to the institution of another suit upon the cause of action here involved[,] plaintiff pays to defendant all of its taxable costs and all expenses incurred by said defendant in preparation for this case, said costs and expenses to be determined by the court prior to the time such second suit is commenced");

*Accord Wright v. Standard Ins. Co.*, 2008 WL 5070228 (M.D. Fla. Nov. 24, 2008) (granting plaintiff's post-answer R. 41(a)(2) motion for dismissal w/o prejudice) ("The court declines to award attorneys fees * * * [but] condition[s] the dismissal of this suit upon the payment of Standard's reasonable attorney's fees and costs should Wright re-file her claim against Standard."); *Watson v.*

**IT IS SO ORDERED** on this 22nd day of July 2009.

                                                                /s/ Paul L. Maloney
                                                                 Honorable Paul L. Maloney
                                                                 Chief United States District Judge

---

*Ala. Bd. of Pardons & Paroles*, 2008 WL 2939520, *4 (M.D. Ala. July 25, 2008) ("[T]he court will instead impose as a condition, in accordance with Rule 54(d), that Watson pay all costs of this dismissed action if she 'files an action based on or including the same claim against the same defendants.'"); *Heitert v. Mentor Corp.*, 2007 WL 4051644 (E.D. Mo. Nov. 15, 2007).

      **The court will also condition dismissal of BCS-Hampton Roads on the Harshaws' agreement that in any re-filed case in another forum, BCS-Hampton Roads will be entitled to use the discovery from the instant case.** *See Wakefield v. Children's Hosp. Inc.*, 2009 WL 588021, *4 (S.D. Ohio Mar. 6, 2009) (Sargus, J.) ("Plaintiff's motion for leave to dismiss without prejudice pursuant to Fed. R. Civ. Pro. 41(a)(2) is **GRANTED**, on the condition that any discovery material assembled by the parties in this case may be used in subsequent litigation involving the parties.") (record citation omitted).