UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIAM AND JULIE HARSHAW, Husband & Wife, | Case No. 1:08-cv-104
individually and as guardians of ROMAN HARSHAW, |
|
    Plaintiffs, | Chief Judge Paul L. Maloney
|
    v. | Magistrate Judge Ellen Carmody
|
BETHANY CHRISTIAN SERVICES, |
BETHANY CHRISTIAN SERVICES INT'L, INC., and |
BETHANY CHRISTIAN SERVICES |
- HAMPTON ROADS, all Michigan corporations, |
|
    Defendants. |
|
_____

## ORDER
" Harshaw 9 "

**Affirming the Magistrate's Ruling Denying Defendants Leave to Designate an Additional Expert;
Directing the Plaintiffs to Respond to Defendants' Motion for Reconsideration of *Harshaw 8***

    This is a diversity tort case brought by two Virginia citizens against three Michigan corporations which have their principal places of business in Michigan: Bethany Christian Services ("BCS", Bethany Christian Services International, Inc. ("BCSI"), and Bethany Christian Services-Hampton Roads, Inc. ("BCS-HR"). The controversy arises out of the plaintiffs' adoption, with the assistance of one or more of the defendants, of a Russian boy who allegedly suffers from fetal alcohol syndrome.

    In *Harshaw 5*, 2010 WL 774321, *8-11 with nn. 5-6 (W.D. Mich. Feb. 25, 2010) (Maloney, C.J.),this court held that Virginia substantive law governs all claims and issues in the case. In *Harshaw 6*, 2010 WL 1692833, *15-27 (W.D. Mich. Apr. 26, 2010) (Maloney, C.J.), the court

determined that under the new test enunciated in *Friend v. Hertz Corp.* (U.S. 2010), the principal place of business of BCS-HR is Grand Rapids, Michigan, not Virginia as the court previously believed under our circuit's former "total activities" PPB standard. That made BCS-HR diverse from the Harshaws (Virginia citizens), leading the court to reinstate BCS-HR as a party defendant, *id.* at *27. *Harshaw 6* also adhered to the court's earlier determination that Michigan choice-of-law principles call for application of Virginia substantive law, *id.* at *28-30.

On May 20, 2010, the defendants filed a motion for reconsideration of *Harshaw 6*'s PPB determination, but the court rejected the motion for failure to comply with our District's Local Civil Rule 7.1(d)'s requirement that a "moving party shall ascertain whether the motion shall be opposed" and "shall affirmatively state the efforts of the moving party to comply with the obligation imposed by this rule." *Harshaw v. Bethany Christian Services et al.*, 2010 WL _____ (W.D. Mich. July 2, 2010) (Maloney, C.J.) ("*Harshaw 8*").

Also, the defendants moved for summary judgment on all four claims, while the Harshaws cross-moved for summary judgment on the second, third and fourth claims only. Applying Virginia substantive law, the court denied both sides' motions for summary judgment on counts one, two, and three, the parents' common-law claims for intentional misrepresentation, negligent misrepresentation, and negligent failure to disclose. Again applying Virginia substantive law, the court granted the defendants' motion for summary judgment on count four, adopted son Roman Harshaw's common-law claim for negligent failure to disclose. *See Harshaw v. Bethany Christian Servs., Inc. et al.*, No. 1:08-cv-104 Doc 272, – F. Supp.2d –, 2010 WL 2169629 (W.D. Mich. May 28, 2010) (Maloney, C.J.) ("*Harshaw 7*"). Because that was the only claim asserted on Roman's behalf, *Harshaw 7* removed Roman Harshaw as a party plaintiff.

**In May 2010, the Harshaws filed a motion to strike the answer and affirmative defenses or enter judgment against the defendants as a contempt sanction.** Specifically, in *Harshaw 6*, this court directed the defendants to reimburse the Harshaws, no later than May 17, 2010, in an amount described therein, related to the reinstatement of BCS-HR as a defendant. *See Harshaw 6*, 2010 WL 1692833 at *27-28 (discussion) and *31 (order). The defendants missed that deadline by three days, and made no effort to seek an extension of time from this court or from opposing counsel. Defense counsel was saddled with his insistence in an e-mail that the defendants "should not have to make the payment" ordered by *Harshaw 6* until after this court ruled on their motion for reconsideration. The Harshaws contended that default judgment, or the striking of the answer and affirmative defenses, were appropriate sanctions for this conduct.

The court found that defendants' refusal to pay by the *Harshaw 6* deadline was intentional, not inadvertent, but it determined that a sanction far short of default judgment or equivalent was sufficient. Specifically, the court prohibited the defendants from *further*[1] contesting this court's determination that BCS-HR's principal place of business is Michigan. *See Harshaw 8*, 2010 WL _____ at *\_\_\_. In addition, the court required the defendants to reimburse plaintiffs for only one-third the cost of preparing and filing their amended motion for default judgment (and the accompanying briefs and attachments). *See Harshaw 8*, 2010 WL _____ at *\_\_\_.

**On July 23, 2010, the defendants filed a motion for reconsideration of portions of *Harshaw 8*, *see* Doc 286.** First, the defendants ask the court to reconsider its denial without

---

[1] The defendants already had and used a full opportunity to state their view of BCS-HR's PPB under the former total-activities test. They likewise had, and availed themselves of, a full opportunity to state their view of that issue under the new *Hertz* nerve-center test.

prejudice of their motion to reconsider *Harshaw 6*'s PPB determination, which was based on their failure to comply with the local civil rule requiring consultation with opposing counsel before filing a motion. The defendants seek to classify this as a mere "technical" defect which should not have resulted in foreclosing their ability to *re*-litigate the issue of defendant BCS-HR's principal place of business under *Hertz*. They rely on a case in which this court suggested that it might not deny a motion for failure to comply with that local rule if the movant otherwise would have no chance to raise a purported defect in subject-matter jurisdiction.

Second, the defendants ask the court to reconsider the non-monetary sanction which *Harshaw 8* imposed for their clearly willful refusal to obey a certain earlier monetary reimbursement requirement. Specifically, the court refused the plaintiffs' request to enter default judgment or strike the defendants' answer and affirmative defenses. Rather, the court took the far lesser step of barring the defendants from continuing to challenge the PPB determination, which they already had one full opportunity to contest under the former total-activities standard and another opportunity to contest under the new *Hertz* nerve-center standard. The defendants attempt to portray this sanction as impermissible because it prevents them from further pursuing their argument – already considered at length and rejected – that the court lacks subject-matter jurisdiction because defendant BCS-HR's principal place of business is, according to the defendants, Virginia rather than Michigan, rendering it non-diverse from the Virginia-citizen Harshaws.

In the alternative, if the court does not grant reconsideration of these aspects of *Harshaw 8*, the defendants ask the court to certify the matter for interlocutory appeal, a course of action which judges in our circuit have described as "extraordinary", *Gieringer v. Cincinnati Ins. Cos.*, 2010 WL 2572054, *4 (E.D. Tenn. June 18, 2010) (Mattice, J.), and "disfavored", *Alexander v. Provident Life*

*& Acc. Ins. Co.*, 663 F. Supp.2d 627, 639 (E.D. Tenn. 2009) (Collier, C.J.) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 638 (1981) and *Sinclair v. Schriber*, 834 F.2d 103, 105 (6th Cir. 1987)). *See also SEC v. Blackwell*, 2007 WL 1169362, *3 (S.D. Ohio Apr. 18, 2007) (Marbley, J.); *Trollinger v. Tyson Foods, Inc.*, 2006 WL 2868980, *1 (E.D. Tenn. Sept. 29, 2006); *Takacs v. Hahn Automotive Corp.*, 1999 WL 33117266, *4 (S.D. Ohio Apr. 23, 1999) (Rice, J.).

The court would benefit from the plaintiffs' response to the defendants' motion to reconsider these aspects of *Harshaw 8*, and to the defendants' request for certification of an interlocutory appeal.

**Appeal from Magistrate's Ruling Regarding Additional Expert Witness**

<u>The Context of the Magistrate's Ruling.</u>

The defendants portray the procedural history and context of the Magistrate's ruling regarding the additional expert witness as follows:

> On December 2, 2009, just under two weeks before the filing of the underlying motion on December 15, 2009, new counsel filed an Appearance in this matter. New counsel was retained following the Court's ruling that, while represented by their prior counsel, Defendants' statute of limitations claim in this matter had not been preserved.
>
> New counsel expeditiously reviewed the voluminous file, including Plaintiffs' six-volume demand claiming just under $45 Million in damages, numerous deposition exhibits, numerous documents from the parties, and several Motions pending before the Court. Having done so, new counsel concluded that naming an additional expert in the area of adoption is crucial to the defense of the case, and Defendants' motion [Document 178] was promptly filed. Less than a week later, on December 21, 2009, Defendants filed, as a supplement to their Motion, the report of their proposed expert, Monica Farris Linkner. [footnote 2:] This date coincided with the date when several of Defendants' expert disclosures were due. Some were due even later.[2]

---

[2] Our local civil rules allow fourteen days to file an appeal from a Magistrate's ruling on a non-dispositive matter, *see* W.D. MICH. LCIVR 72.3(a). The fourteen days began running on the day after the parties were served with the ruling, *see* FED. R. CIV. P. 6(a)(1)(A), and the court counts all days,

Defs' Appeal at 4. The original case management order, issued by the undersigned in June 2008, required the plaintiffs and defendants to designate their proposed expert witnesses no later than September 30, 2008 and December 1, 2008, respectively, *see* Doc 13. The *amended* case management order's deadline for the plaintiffs to name their proposed expert witnesses was February 15, 2009, *see* Doc 28, and the plaintiff named a University of California at Berkeley - Boalt Hall Law School professor as their expert regarding the standard of care governing international adoption agencies. *See* Doc 53. The amended deadline for the defendants to name their expert witnesses was *March 15, 2009*, nine months before the defendants moved for leave to designate Linkner as their standard-of-care expert.[3]

Standard of Review.

"Because the Magistrate Judge's order ruled on a non-dispositive issue pursuant to 28 U.S.C.

---

including weekends and federal holidays, *see* FED. R. CIV. P. 6(a)(1)(B). Because defense counsel are registered participants in our district's Electronic Case Filing System ("ECF"), the defendants were deemed to be served with the Magistrate's ruling as soon as it issued. *See Love v. SSA*, 605 F. Supp.2d 893, 895 (W.D. Mich. 2009) (citing W.D. MICH. LCIVR 5.7(i)(II) ("[S]ervice of an electronically filed document upon a registered attorney is deemed complete upon the transmission of an NEF [Notice of Electronic Filing] to that attorney . . . .")). The Magistrate made her ruling on January 25, 2010, so the defendants' February 3, 2010 appeal is timely.

The plaintiffs had fourteen days to file a response to the appeal (W.D. MICH. LCIVR 72.3(a)), beginning on February 4 and ending at midnight on February 17 (FED. R. CIV. P. 6(a)(1)(A) and (B)). Thus the plaintiffs' response brief, electronically filed on February 17, 2010, was also timely.

Our Local Civil Rules are silent as to the right of appealing party to file a reply brief, and the defendants did not attempt to file or seek leave to file such a brief.

[3]
This court issued a Second Amended Case Management Order in November 2009, *see* Doc 167, but it did not mention expert-witness deadlines because those deadlines had long passed by then.

§ 636(b)(1)(A) – not a dispositive matter pursuant to 28 U.S.C. § 636(b)(1)(B) – this court may disturb the order only if it was 'clearly erroneous or contrary to law.'" *Marr v. Foy*, 2008 WL 5111849, *3 (W.D. Mich. Dec. 3, 2008) (Maloney, C.J.) (citing 28 U.S.C. § 636(b)(1)(A) and FED. R. CIV. P. 72(a)); *see also* W.D. MICH. LCIVR 72.3(a), Appeal of Nondispositive Matters.

This court will find a magistrate's legal conclusion to be "contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Kovats v. State of Michigan*, 2008 WL 2095423, *1 (W.D. Mich. May 16, 2008) (Maloney, J.) (quoting *Botta v. Barnhart*, 475 F. Supp.2d 174, 179 (E.D.N.Y. 2007) (quoting *Catskill Dev., LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002))).

This court will find a magistrate's factual finding to be "'clearly erroneous when, although there may evidence to support it, the . . .court, [considering the entire evidence], is left with the definite and firm conviction that a mistake has been committed.'" *NEFT, LLC v. Border States Energy, LLC*, 297 F. App'x 406, 408 (6th Cir. 2008) (Richard Allen Griffin, J.) (quoting *US v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007)); *see also Sawyer v. Whitley*, 505 U.S. 333, 346 n.14 (1992) (Rehnquist, J.) (discussing *US v. US Gypsum Co.*, 333 U.S. 364, 395 (1948)'s statement of the clear-error standard, which FED. R. CIV. P. 52(a) applies to appellate review of a judge's factual findings in a civil case). This court's review of a Magistrate Judge's factual findings on a 28 U.S.C. § 636(b)(1)(A) referral is even more deferential than its review of her legal conclusions. *Burket v. Hyman Lippitt, P.C.*, 2006 WL 2309843, *2 (W.D. Mich. Aug. 9, 2006) (citing, *inter alia*, *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (Enslen, J.)).

The defendants assert that "[i]t has also been persuasively argued that the Court has authority to go beyond the confines of the clearly erroneous standard in appropriate circumstances." Defs'

Appeal at 3. As authority for this proposition, however, the defendants cite only the "Federal Practice and Procedure" treatise of Wright, Miller & Marcus. *See id.* at 3-4. The defendants do not point to *any* decision in the Sixth Circuit, not even a district-court decision, which holds or implies that a district judge may dispense with the clearly-erroneous / contrary to law standard of review set forth in FED. R. CIV. P. 72(a), W.D. MICH. LCIVR 72.3(a), and most significantly, 28 U.S.C. § 636(b)(1)(A). Nor does the court find any such decisions.

Because this standard of review is expressly and clearly mandated by statute, the court lacks any authority to depart from it absent constitutional infirmity. *See Monsanto Co. v. Geertson Seed Farms*, – U.S. –, –, 130 S.Ct. 2743, 2758 n.5 (2010) (Alito, J., for seven JJ.) ("'A court has no authority to depart from the statutory language . . . .'") (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 406 (1976)); *Telespectrum, Inc. v. Pub. Serv. Com'n of Ky.*, 227 F.3d 414, 421 (6th Cir. 2000) ("This Court may not amend or add to the plain language of a statute.") (citing *Bartlik v. US Dep't of Labor*, 62 F.3d 163, 166 (6th Cir. 1995)).

Discussion.

At oral argument, defense counsel Zausmer had this exchange with the Magistrate Judge regarding the defendants' motion for leave to belatedly designate an additional expert witness:

> MR. ZAUSMER: * * * What we would ask the Court to do is look at the reality of what is really going on in this case as opposed to just looking at the single deadline for naming an expert.
>
> [W]e came into this case on December 8th.
> * * *
> [We] immediately began a transition, which is moving forward to the point that we are really doing the work at this point. We were doing the depositions in Virginia yesterday [February 2, 2010], obviously here [in Grand Rapids, Michigan] today. We are carrying the laboring oar, and so that began on December 8th.
>
> And one of the first things that I looked at on the 8th was that it was a standard of care

> expert on the other side, and we did not have a standard of care expert. And candidly, that is just a very different call than I would have made if I were running the case from the outset. And what we proceeded to do in the next 13 days, and obviously with the Christmas holidays coming up, between December 8th and December 21st is, we worked extremely hard to initially find and then put together an expert report with a highly competent and well-known expert in this field. And we used the December 21st cut off date as the cut off date for providing the report, because this was the last day to file certain non-expert reports related to EEG's, economists, life care planners, etcetera, and so we treated December 21st as the deadline. And so I'm sure the Court has seen Ms. Linkner's report.
>
> THE COURT: I have read it.
>
> MR. ZAUSMER: And a lot of work went into that report. This was not something that was just slapped together. And so in that days we . . . treated this deadline seriously and worked hard to make that deadline.
>
> I would point out, your Honor, that this is not an expert who was unknown to them. She sits with counsel on various adoption committees, national adoption committees, so they certainly know who she is.
>
> [Let's] look at where we really are in this case right now and what is going on, as opposed to just looking at the deadlines. I want to talk about where we are on certain fact discovery.
>
> In late December [2009], I was in Virginia doing fact discovery, the depositions of Dr. Aiello and Dr. Reid, two treating physicians. Yesterday [February 2, 2010] counsel and I were doing fact discovery of Dr. Holland * * *
> * * *
> * * * the physician that the family consulted with before the adoption.

Doc 212, Ex A at 4:8-19 and 5:1 to 7:21. While much of the defendants' argument regarding the status of the case is now outdated, it is important for the court to understand the procedural posture of the case as it confronted the Magistrate when she made her ruling. Defense counsel Zausmer explained as follows to the Magistrate about the then-prevailing state of discovery:

> [E]xpert discovery, it hasn't started. Okay. Dr. Federici, who is their key physician, the neuropsychologist, his deposition is scheduled for late February. We haven't even started the process of scheduling life care planners, the economists. The independent medical evaluations of this young man took place in late December, just less than a month ago, in Atlanta, and there is no doubt that plaintiffs are going to

> want those depositions. Those haven't even been discussed. And so there is all kinds of expert discovery that hasn't even started. Okay. And so if you think about the context of Ms. Linkner . . . she will not be deposed, if you allow her as a witness, she will not be deposed one day later than she would otherwise have been deposed. She is an expert, and she will be deposed with all of the other experts.
>
> [We] have got a July trial date, and we have been working cooperatively with counsel. * * * So we have got six months now to a trial date to do all of this work.
>
> We are not starting this case over, Your Honor. We are not asking you adjourn . . . the motion[s] for summary judgment. We are not asking you to adjourn a single date. This is going to have no effect on the pending motions for summary judgment [since decided], they are on a completely different issue, and we don't see that there is any prejudice.

Doc 212, Ex A at 8:23 to 10:9. Defense counsel also emphasized the risk of a major windfall to the plaintiffs if the defendants were not permitted to add Ms. Linkner as a standard-of-care expert despite the expiration of the deadline many months earlier. Defense counsel argued as follows:

> This is not a $25,000 slip and fall case. This is a $45 million claim. And at least in my view, the purpose of what we are trying to accomplish . . . is to get at the truth, and it seems to me that if they are allowed to proceed where they've got an expert on this critical issue, standard of care, we've got no expert, there is a real potential for a major windfall, and that is just not what the purpose is. The purpose to me of the whole process is try and get to the truth. And if we put all of the experts up there, have everybody say their piece, and the jury concludes that my clients did something wrong, so be it. But it seems to me that under this set of circumstances, given how far out we have until the trial, given all of the things that are still going on, that the right thing to do is to have this court exercise its discretion and to allow this single witness.

Doc 212, Ex A at 10:11 to 11:4. The Magistrate Judge posed this query in response:

> [I]f the facts as you have set them out are correct, it seems that if the expert had been properly named timely, that there is no prejudice in the sense that, well, any prejudice can be cured. But what about plaintiffs' point . . . that . . . this is not just a can they get the deposition taken question, this is a question of strategic decisions having been made by former counsel, strategic decisions having been made by plaintiffs in reliance on what experts actually were named and that that constitutes prejudice [?]

Doc 212, Ex A at 11:17 to 12:3. Defense counsel replied that nothing that the proposed standard-of-

care expert would say was any different from the position that the defendants had advanced, and indicated their intention to advance, from the outset of the litigation: "The only [difference] is, we've got an expert saying it as opposed to somebody from Bethany. * * * [We] are not changing a theory, not changing a defense. It's the same exact defense, just being advanced by an expert." Doc 212, Ex A at 12:14-21. New defense counsel explained that while former defense counsel believed it was sufficient to have "Bethany people, because they are experts in this area" testify that they did not do anything below the international adoption industry's standard of care, he did not believe that was sufficient when a true expert was available. *See* Doc 212, Ex A at 12:22 to 13:3.

The Magistrate Judge ultimately rejected defense counsel's request to allow the designation of the standard-of-care expert nine months after the deadline established by the amended case management order, stating as follows:

> I'm struggling with the good cause here. [Y]ou've decided to undertake a different strategy, and candidly, I think it's a smart one. But why in any case where new counsel comes on board don't they just get to do over the case management order.
> * * *
> As of March of 2009 . . . your clients [BCS] believe[d] that they knew what experts were going to be called by the plaintiffs, and they believed that they knew what experts were going to be called by your client.

Doc 212, Ex A at 13:4-21.

In their appeal, the defendants continue to emphasize that allowing them to belatedly designate Linkner as an adoption standard-of-care expert would not prejudice the Harshaws, because the Harshaws could simply be permitted to depose Linkner at least thirty days prior to trial as contemplated by the Amended Case Management Order. The defendants also continue to stress that disallowing the designation of Linkner could result in an unjust windfall to the plaintiffs:

> Plaintiffs have a reciprocal expert, and allowing Ms. Linkner's testimony will further

-11-

> cause of justice by providing a full discussion of the issues necessary to resolution of the case. * * *
>
> Given the magnitude of the damage claim being made in this case (approximately $45 Million), the circumstances under which new counsel was retained and brought the Motion, and the lack of any resulting prejudice to Plaintiffs from granting the motion, the magistrate judge's decision not to allow Defendants to name an adoption expert in this case was an abuse of discretion. * * *

Defs' Appeal at 5 and 6.

**The court is unpersuaded by the defendants' appeal and finds the Magistrate's ruling to be well-reasoned and not an abuse of discretion.** Federal Rule of Civil Procedure 16(b) provides that a scheduling and case management order "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." As the plaintiffs pointed out before the Magistrate Judge, *see* Doc 212 Ex A at 16:1-17, "'[t]he primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirement.'" *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (Guy, J.) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citations omitted)).

**Defendants' former counsel certainly did not act with reasonable diligence in failing to designate this standard-of-care expert before the court-ordered deadline**; they did not even seek leave to belatedly designate such an expert during the *half a year* they represented the defendants after the deadline passed. Former defense counsel's lack of diligence is particularly striking given that this court extended the deadline for defendants' designation of expert witnesses by more than five months: from September 30, 2008 (Doc 13) to March 15, 2009 (Doc 28). *Accord Commonwealth Land Title Ins. Co. v. St. Johns Bank & Trust Co.*, 2009 WL 4572783, *2 (E.D. Mo. Nov. 24, 2009) (J. Charles A. Shaw) ("The Court recognizes that somewhat unusual circumstances are present in this case as a result of the disqualification of defendant's original counsel . . . .

Nonetheless, it concludes *defendant had ample opportunity to amend its pleadings and designate experts when represented by its original counsel, particularly because those deadlines were extended by sixty days*, and defendant has not shown good cause to reestablish the expired deadlines.") (emphasis added). Moreover, after the plaintiffs submitted the report of their timely-designated standard-of-care expert, Professor Hollinger, in June 2009, the defendants had a month to review Hollinger's report and provide a rebuttal report. For whatever reason, former defense counsel chose not to do so. As the Supreme Court has long held, when a party voluntarily chooses an attorney

> as his representative in the action, he . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 524 (6th Cir. 2006) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993) (relying on *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962))). *See, e.g., Allen v. Murph*, 194 F.3d 722, 723-24 (6th Cir. 1999) (citing *Pioneer* as authority for upholding the district court's finding of inexcusable neglect even though the neglect was due solely to the "carelessness of these attorneys" and even though the clients themselves had acted "promptly and diligently").

**The defendants may not simply ignore the lack of diligence of their former counsel on this score and shift the focus to the diligence of their new counsel.** This court adheres to the widely followed principle that "[t[he arrival of new counsel . . . does not entitle parties to conduct additional discovery or otherwise set aside valid and binding orders of the court, regardless of the efficacy of any new strategy counsel seeks to follow." *Adams v. Sch. Bd. of Hanover Cty., Va.*, 2008

WL 5070454, *4 (E.D. Va. Nov. 26, 2008) (M.J. Lauck) (citing *Ellis v. CIA*, No. 98-2481, 1999 WL 704692, *7 n.8 (4th Cir. Sept. 10, 1999) (affirming district court's refusal to permit plaintiff's new counsel to conduct additional discovery after the expiration of the court-ordered discovery deadline)).

Judge Quist of our court confronted a similar situation in *Petter Investments, Inc. v. Hydro Engineering, Inc.*, 2009 WL 2175765 (W.D. Mich. July 21, 2009). After noting that he had granted plaintiff's request to change counsel well into the case, Judge Quist denied the plaintiff's request to extend the dispositive-motion deadline and permit it to conduct additional discovery. Judge Quist's sound reasoning applies squarely to the defendants' request in the case at bar:

> Petter is not entitled to an extension simply because there has been the opportunity for fresh eyes to take a look at the discovery that has occurred in this case. * * *
> * * *
> In a recent series of motions, Petter has argued for various extensions on the grounds that its new counsel regards as relevant certain facts which Petter's previous counsel apparently considered irrelevant. The undersigned is sufficiently experienced as counsel and judge to know that lawyers often look at matters somewhat differently – what is important, what isn't; should I ask that or not; etc.
>
> *For better or worse, parties are stuck with their counsel.*[4] [C]ounsel and parties should not be allowed to offend FED. R. CIV. P. 1's instruction that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." In this case, Rule 16(b) (4) is quite explicit. *Petter's new counsel's disagreement with strategic decisions made by Petter's previous counsel is not good cause to reopen discovery* or extend various deadlines . . . .

*Petter*, 2009 WL 2175765 at *1 and *2 (emphasis added, paragraph break added) (other internal

---

[4] Even in criminal cases, where the defendant's very liberty is at stake, "it is a well-accepted principle that, except in a few carefully defined circumstances, a criminal defendant is bound by his attorney's tactical decisions unless the attorney provided constitutionally ineffective assistance." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 556 U.S. –, –, 129 S.Ct. 2308, 2330 (2009) (J. Kennedy, concurring, joined by J. Kennedy in full and joined by J. Thomas in pertinent part) (citing *Vermont v. Brillon*, 556 U.S. –, –, 129 S.Ct. 1283, 1290-91 (2009) (for seven Justices)).

quotation marks omitted). *Accord Marcin Engineering, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo. 2003) (Sr. J. Kane) ("In order for expert disclosures and related discovery to be reopened as Grizzly Ranch requests, Grizzly Ranch must show good cause to amend the discovery deadlines stated in the . . . Scheduling Order.  * * *  That new counsel is dissatisfied with the state of the case it inherited is not grounds . . . for reopening discovery long after the court-ordered deadlines have passed.").

For these reasons, the court will affirm the denial of defendants' motion for leave to designate an additional expert nine months after the court-ordered deadline, notwithstanding the replacement of their counsel shortly before filing the motion.

**ORDER**

Defendants' appeal from the Magistrate Judge's non-documentary January 25, 2010 ruling denying the defendants leave to designate an additional expert witness **[doc #212] is OVERRULED**.

The Magistrate Judge's Order of January 25, 2010 ruling denying the defendants' motion for leave to designate an additional expert witness beyond the deadline is **AFFIRMED**.

No later than Thursday, August 26, 2010, the **plaintiffs shall file** a brief responding to the defendants' motion for reconsideration of *Harshaw 8*.

**IT IS SO ORDERED this 5th day of August 2010.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge